**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

| | |
|---|---|
| The Estate of James Strong Jr.; Lanhisha Richmond, Individually and as Natural Parent of J.S. and T.S.R., minors; Marcus Strong; and Howard Mitchell Jr.; ) ) ) ) | |
| ) | |
| Plaintiffs, ) | |
| ) | No._____ |
| v. ) | |
| ) | Judge _____ |
| ) | |
| The City of Northglenn, Colorado; The City of Thornton, Colorado; The City of Westminster, Colorado; Nicholas Wilson; Jason Schlenker; and Adam Nielsen ) ) ) ) | **COMPLAINT** |
| ) | |
| Defendants. ) | |

## COMPLAINT AT LAW

NOW COME the Plaintiffs The Estate of James Strong; Lanhisha Richmond, Individually and as Natural Parent of J.S. and T.S.R, minors; Marcus Strong; and Howard Mitchell Jr. ("Plaintiffs"); by and through their attorney, J. Benton Stewart II, and in complaining against Defendants; The City of Northglenn, Colorado; The City of Thornton, Colorado; The City of Westminster, Colorado; Nicholas Wilson; Jason Schlenker; and Adam Nielsen; pleading hypothetically and in the alternative, states as follows:

### Jury Demand

1.      The Plaintiff hereby demands a trial by jury.

### Jurisdiction

2.  This Court has jurisdiction over federal questions pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1343, as well as supplemental jurisdiction over state law claims pursuant to 28 U.S.C. §1367(a).

3.  This is an action brought pursuant to 42 U.S.C. § 1983 to redress the deprivation, under color of state law, of rights secured under the Constitution or laws of the United States and for claims for violations of state law that are so related to other claims in this action within the court's original jurisdiction such that they form part of the same case or controversy under Article III of the United States Constitution.

4.  Venue is proper in this Court under 28 U.S.C. §1391(b) because all incidents, events, and occurrences giving rise to this action occurred within the City of Northglenn, Adams County, Colorado, a place within the jurisdiction of this Court.

5.  Plaintiffs state that they have complied with all prerequisite requirements under Colorado law to sue the governmental entities and individuals named as Defendants in this matter.

### Parties

6.  A Court appointed Professional Executor is the personal representative of Estate of James Strong, Jr.  At the time of his death on May 28, 2015, James Strong, Jr. resided at 10909 E. 109th Place, Northglenn, Colorado.  At all times relevant herein, James Strong, Jr. had legal rights established by the Constitution of the United States, the Constitution of the State of Colorado, and laws set forth by state and federal statutes.

7.  Lanhisha Richmond (hereinafter "Richmond") was the common-law wife of James Strong, Jr., living and residing with James Strong Jr. for approximately seven years since 2008 when he moved to Colorado from Tennessee.

8. Richmond and James Strong, Jr. had one minor daughter, JS.  JS and Richmond resided at 10909 East 109th Place, Northglenn, Colorado with James Strong Jr. at the time of the incident giving rise to this complaint.

9. Richmond is the parent and legal guardian of the minor child, TSR.  TSR lived with Richmond, JS, and James Strong Jr. at 10909 East 109th Place, Northglenn, Colorado, at the time of the incident giving rise to this complaint.

10. Marcus Strong was visiting with his brother, James Strong Jr. and sister-in-law, Richmond, at 10909 East 109th Place, Northglenn, Colorado, at the time of the incident giving rise to this complaint.  Marcus Strong resides at 4185 Blacksmith Cove Memphis TN 38125.

11. Howard Mitchell Jr. (hereinafter "Mitchell Jr.) was visiting with his friend James Strong at 10909 East 109th Place, Northglenn, Colorado, at the time of the incident giving rise to this complaint.  Mitchell Jr., resides at 4811 German Town Road Memphis TN, 38126.

12. Defendant City of Northglenn, Colorado (hereinafter "City of Northglenn") is a municipality established under the laws of the State of Colorado.  It conducts official business at 11701 Community Center Drive, Northglenn, CO 80233.  The City of Northglenn Police Department was an agency of the City of Northglenn and was responsible for the hiring, training, supervising, and disciplining of agents, employees and police officers of the City of Northglenn, including Defendants Officer Nicholas Wilson, Detective Jason Schlenker, and other members of the North Metro Task Force.

13. Defendant City of Thornton, Colorado (hereinafter "City of Thornton") is a municipality established under the laws of the State of Colorado.  It conducts official business at 9500 Civic Center Drive Thornton, CO 80229.  The City of Thornton Police Department was

- 3 -

an agency of the City of Thornton and was responsible for the hiring, training, supervising, and disciplining of agents, employees and police officers of the City of Thornton, including members of the North Metro Task Force.

14. Defendant City of Westminster, Colorado (hereinafter "City of Westminster") is a municipality established under the laws of the State of Colorado. It conducts official business at 4800 W 92nd Avenue Westminster, CO 80031. The City of Westminster Police Department was an agency of the City of Westminster and was responsible for the hiring, training, supervising, and disciplining of agents, employees and police officers of the City of Westminster, including members of the North Metro Task Force.

15. The North Metro Task Force is a multi-jurisdictional governmental entity created under Colorado law that is made up of officers from eight cities and counties in Colorado, including the Northglenn Police Department, the City of Westminster Police Department, and the City of Thornton Police Department. These three cities are responsible for the hiring, training, supervising, and disciplining of agents, employees, and police officers in the North Metro Task Force.

16. Defendant Nicholas Wilson was a law enforcement officer with the City of Northglenn Police Department and served on the North Metro Task Force at all times material hereto. In his capacity as a police officer, said Defendant was responsible for policing the City of Northglenn under the color of state law as well as the ordinances, regulations, customs, and usages of the State of Colorado and the City of Northglenn Police Department.

17. Defendant Jason Schlenker (hereinafter "Schlenker") was a law enforcement officer with the City of Northglenn Police Department and served on the North Metro Task Force at all times material hereto. In his capacity as a police officer, said Defendant was

responsible for policing the City of Northglenn under the color of state law as well as the ordinances, regulations, customs, and usages of the State of Colorado and the City of Northglenn Police Department.

18. Defendant Adam Nielsen (hereinafter "Nielsen") was a law enforcement officer and served as the detective for the North Metro Task Force. In his capacity as a police officer and detective, said Defendant was responsible for police the cities within the North Metro Task Force's jurisdiction under the color of law state law, as well as the ordinances, regulations, customs, and usages of the State of Colorado and the North Metro Task Force.

## The Factual Allegations

19. On May 28, 2015, Richmond, her children J.S. and TSR, her husband James Strong, Jr., her brother-in-law Marcus Strong, and Mitchell, Jr. were in the home rented by Mrs. Richmond and her husband.  Richmond and James were asleep in their bedroom; JS was in her bedroom nearby; TSR was downstairs in the basement sleeping on the couch; and Marcus Strong and Howard Mitchell Jr. were in the living room.

20. Suddenly, Richmond and James were awoken by a loud sound followed by more loud noises coming from the living room area.

21. Unbeknownst to anyone inside the home, the police had detonated a flash-bang grenade outside the home and used a battering ram to knock the front door from its hinges.

22. James Strong Jr., fearing for the safety of his family, grabbed his wife's registered gun.

23. He did not leave the bedroom; instead, he stood behind the door with the gun pointed upward, to defend his family from whoever was intruding on their home.

24. James Strong Jr. and Lanhisha Richmond heard footsteps moving closer to their bedroom. At no time did they hear the intruders identify themselves as law enforcement.

25. Marcus Strong, Howard Mitchell Jr., and others inside the house never heard the men identify themselves as law enforcement.

26. Once the intruders began to enter his bedroom, James Strong Jr. fired two shots at the intruders, who had not yet identified themselves as law enforcement. The person forcing entry into the home and bedroom was Officer Nicholas Wilson, an employee with the Northglenn Police Department.

27. Officer Nicholas Wilson returned fire injuring Strong. As Strong fell to the ground, his gun expelled a third and final shot.

28. Officer Nicholas Wilson continued to shoot at Strong who remained inside his bedroom, through the bedroom wall.

29. Officer Nicholas Wilson continued shooting through the bedroom wall as he retreated down the hall into the smaller bedroom of J.S., a child. J.S. was present and observable as Officer Nicholas Wilson continued firing from within her room.

30. While Officer Nicholas Wilson continued shooting James Strong, Jr. had ceased shooting and lay motionless on the ground.

31. Richmond was in the bedroom with James Strong Jr. as he was shot in front of her and fearing that she, too, would be shot by the yet unidentified intruder.

32. A second unidentified intruder entered the bedroom of James Strong, Jr., pointing a gun at Strong Jr. as he lay severely injured on the ground. Then the second intruder, later identified as Jason Schlenker, began to shoot Strong repeatedly with a .233 caliber rifle which was equipped with a silencer.

33. Schlenker starting firing at a distance of eight feet and progressed until he stood over Strong Jr.'s prone body.

34. Due to the number of bullets striking Strong Jr. parts of his body were described as pulpified by the Medical Examiner.

35. Richmond was yelling at the Schlenker to stop shooting as Strong Jr. was in a fetal position on the floor and not resisting.

36. Despite her yelling, Schlenker continued to shoot and moved in closer to Strong Jr. and Richmond.  Once standing over Strong Jr., Schlenker shot Strong Jr. in his head from a distance of ten inches.

37. The coroner's report noted that, "Evidence of close range discharge of a firearm was present on the right side of the face."

38. Schlenker's actions amounted to the execution of Strong Jr.

39. Strong Jr.'s body was riddled with over 20 bullet wounds. The damage was so extensive that the Medical Examiner was not able to determine the path of many of the bullets.

40. During the course of the attack on Strong Jr., numerous shots were directed through walls where no target acquisition was possible.  Additionally, while shots were being directed into Strong's prone body, the projectiles penetrated the floor to the floor below and struck, among other items, a sofa where TSR, a minor, was asleep.

41. The members of the North Metro Task Force were acting on a no knock warrant.  The warrant had been issued nine days earlier on May 19, 2015 to lead investigator Adam Nielsen.  During the period between the issuance of the warrant and the execution of the warrant, a significant change in circumstances had occurred: school had ended that same day on May 28, 2015.

42. The police were aware that the school year had ended and that children would be at home since they used the nearby public school as their staging area.

43. Despite being aware that children were in the home, the police stormed the home, launched a flash-bang grenade in the front yard, never announced their presence, and created an unsafe environment which put the lives of the occupants at substantial risk.

44. The intruders were wearing dark pants, dark long sleeve shirts, masks, and military style boots.

45. Strong was shot twenty times, including six shots to the head and neck area.

46. Marcus Strong, Mitchell Jr., and Richmond were each handcuffed, transported to the jail, and placed in cells.  They sat in the cells without any information being provided or any charges being communicated.  Richmond's children, both TSR and JS, were also placed in state custody by the defendants involved in this matter.

47. No drugs were found in the residence or on any occupant in the house.  They had not committed any crime at the time the police officers had entered the home.

48. James Strong Jr. was killed while acting lawfully by defending his family and his home.

49. Since the shooting, each of the individuals within the house, besides James Strong Jr., have faced severe emotional distress in the form of fear and nightmares, among other symptoms.

## Count 1: 42 U.S.C. § 1983 – Excessive Force
### (Estate of James Strong vs. Nicholas Wilson)

50. Plaintiffs re-allege and incorporate herein the allegations contained in paragraphs 1 through 49 above, as if fully restated herein.

51. The aforementioned conduct of Defendant Nicholas Wilson constituted excessive force in violation of the Fourth Amendment to the United States Constitution.

52. At all material times, Defendant Nicholas Wilson was acting under color and authority of state law as an agent and employee of Defendant City of Northglenn.

53. The aforementioned conduct of Defendant Nicholas Wilson shooting James Strong Jr. was objectively unreasonable, as he repeatedly shot James Strong Jr. after entering his home without announcing his presence and position as a police officer.

54. As a result of Defendant Nicholas Wilson's unjustified and excessive use of force, James Strong Jr. experienced conscious pain and suffering and eventually died.

55. The complained of acts or omissions of Defendant Nicholas Wilson were the proximate causes of James Strong Jr.'s death.

56. The acts or omissions of Defendant Nicholas Wilson caused James Strong Jr. damages in that he suffered extreme physical and mental pain during the assault that resulted in his death.

57. The acts or omissions of Defendants as described herein deprived Plaintiff of his constitutional rights and caused him other damages.

58. As a proximate result of Defendant's unlawful conduct, James Strong Jr. and the Estate of James Strong Jr. has suffered actual physical and emotional injuries, and other damages and losses entitling it to compensatory damages in amounts to be determined at trial. These injuries include, but are not limited to, loss of constitutional and federal rights, physical injuries, extraordinary pain and suffering at the time of death, emotional distress to which his Estate is entitled to claim on his behalf, and for his loss of enjoyment of life and the value of his life and continuing familial relationships.

59. The Estate of James Strong Jr. also has suffered lost future earnings, earnings capacity and related economic loss from James Strong Jr.'s life ending at 32.

60. Plaintiffs are further entitled to attorneys' fees and costs pursuant to 42 U.S.C. §1988, pre-judgment interest and costs as allowable by federal law.

61. In addition to compensatory, economic, consequential and special damages, Plaintiffs are entitled to punitive damages against the Defendant, as his actions were taken maliciously, willfully and with a reckless or wanton disregard of the constitutional rights of Plaintiff.

WHEREFORE, the Estate of James Strong Jr. demands judgment against Defendant Nicholas Wilson for damages, costs, disbursements, attorney's fees, interests, and for any further relief that this Court deems fair and just.

### Count 2: 42 U.S.C. § 1983 – Excessive Force
### *(Estate of James Strong vs. Jason Schlenker)*

62. Plaintiffs re-allege and incorporate herein the allegations contained in paragraphs 1 through 49 above, as if fully restated herein.

63. The aforementioned conduct of Defendant Jason Schlenker constituted excessive force in violation of the Fourth Amendment to the United States Constitution.

64. At all material times, Defendant Jason Schlenker was acting under color and authority of state law as an agent and employee of Defendant City of Northglenn.

65. The aforementioned conduct of Defendant Jason Schlenker shooting James Strong Jr. was objectively unreasonable, as he repeatedly shot James Strong Jr. after entering his home without announcing his presence and position as a police officer.

66. As a result of Defendant Jason Schlenker's unjustified and excessive use of force, James Strong Jr. experienced conscious pain and suffering and eventually died.

67. The complained of acts or omissions of Defendant Jason Schlenker were the proximate causes of James Strong Jr.'s death.

68. The acts or omissions of Defendant Jason Schlenker caused James Strong Jr. damages in that he suffered extreme physical and mental pain during the assault that resulted in his death.

69. The acts or omissions of Defendant Jason Schlenker as described herein deprived Plaintiff of his constitutional rights and caused him other damages.

70. As a proximate result of Defendant's unlawful conduct, James Strong Jr. and the Estate of James Strong Jr. has suffered actual physical and emotional injuries, and other damages and losses entitling it to compensatory damages in amounts to be determined at trial. These injuries include, but are not limited to, loss of constitutional and federal rights, physical injuries, extraordinary pain and suffering at the time of death, emotional distress to which his Estate is entitled to claim on his behalf, and for his loss of enjoyment of life and the value of his life and continuing familial relationships.

71. The Estate of James Strong Jr. also has suffered lost future earnings, earnings capacity and related economic loss from James Strong Jr.'s life ending at 32.

72. Plaintiffs are further entitled to attorneys' fees and costs pursuant to 42 U.S.C. §1988, pre-judgment interest and costs as allowable by federal law.

73. In addition to compensatory, economic, consequential and special damages, Plaintiffs are entitled to punitive damages against Defendant, as his actions were taken maliciously, willfully and with a reckless or wanton disregard of the constitutional rights of Plaintiff.

WHEREFORE, the Estate of James Strong Jr. demands judgment against Defendant Jason Schlenker for damages, costs, disbursements, attorney's fees, interests, and for any further relief that this Court deems fair and just.

### Count 3: 42 U.S.C. § 1983-Failure to Intervene
*(Estate of James Strong Jr. vs. Adam Nielsen)*

74. Plaintiffs re-allege and incorporate herein the allegations contained in paragraphs 1 through 49 above, as if fully restated herein.

75. On May 28, 2015, the aforementioned conduct of Defendants Nicholas Wilson and Jason Schlenker constituted excessive force in violation of the United States Constitution.

76. The aforementioned conduct of Defendants Nicholas Wilson and Jason Schlenker was objectively unreasonable.

77. The aforementioned acts of Defendants Nicholas Wilson and Jason Schlenker were undertaken intentionally, willfully, with malice, and with reckless indifference to James Strong Jr.'s constitutional rights.

78. At all times relevant hereto, Defendant Adam Nielsen was the detective in charge of the North Metro Task Force

79. At all times relevant hereto, Defendant Adam Nielsen was acting under the color of state law.

80. At all times relevant hereto, Defendant Adam Nielsen had knowledge that the aforementioned conduct Defendants Nicholas Wilson and Jason Schlenker constituted unreasonably excessive force under the United States Constitution.

81. At all times relevant hereto, Defendant Adam Nielsen had knowledge that James Strong Jr.'s constitutional rights were being violated.

82. At all times relevant hereto, Defendant Adam Nielsen had a realistic opportunity to intervene and prevent the deprivation of James Strong Jr.'s constitutional rights.

83. As a proximate result of Defendant's unlawful conduct, James Strong Jr. and the Estate of James Strong Jr. has suffered actual physical and emotional injuries, and other damages and losses entitling it to compensatory damages in amounts to be determined at

trial. These injuries include, but are not limited to, loss of constitutional and federal rights, physical injuries, extraordinary pain and suffering at the time of death, emotional distress to which his Estate is entitled to claim on his behalf, and for his loss of enjoyment of life and the value of his life and continuing familial relationships.

84. The Estate of James Strong Jr. also has suffered lost future earnings, earnings capacity and related economic loss from James Strong Jr.'s life ending at 32.

85. Plaintiffs are further entitled to attorneys' fees and costs pursuant to 42 U.S.C. §1988, pre-judgment interest and costs as allowable by federal law.

86. In addition to compensatory, economic, consequential and special damages, Plaintiffs are entitled to punitive damages against Defendant, as his actions were taken maliciously, willfully and with a reckless or wanton disregard of the constitutional rights of Plaintiff.

WHEREFORE, the Estate of James Strong Jr. demands judgment against Defendant Adam Nielsen for damages, costs, disbursements, attorney's fees, interests, and for any further relief that this Court deems fair and just.

### Count 4: 42 U.S.C. § 1983-*Monell* Claim
### (*Estate of James Strong Jr. vs. City of Northglenn, Colorado*)

87. Plaintiffs re-allege and incorporate herein the allegations contained in paragraphs 1 through 49 above, as if fully restated herein.

88. At all relevant times, Defendant City of Northglenn maintained, operated, or otherwise contributed to a special weapons and tactics (S.W.A.T.) unit known as the North Metro Task Force.

89. Defendant Nicholas Wilson, Jason Schlenker, Adam Nielsen and other members of the North Metro Task Force were acting pursuant to these policies, practices, or customs.

90. At all times relevant to this complaint, Defendants Wilson, Schlenker, and Nielsen were employed by the North Metro Task Force and acting under color of state law.

91. At all relevant times, Defendant City of Northglenn had in effect official policies or longstanding practices and customs that condoned and fostered the unconstitutional conduct of Defendant Nicholas Wilson, Jason Schlenker, Adam Nielsen and other members of the North Metro Task Force.

92. Defendant City of Northglenn failed to properly train members of this Task Force, including Defendants Nicholas Wilson, Jason Schlenker, and Adam Nielsen on the use of excessive force.

93. Defendant City of Northglenn failed to properly train members of this Task Force, including Defendants Nicholas Wilson, Jason Schlenker, and Adam Nielsen on the execution of no-knock warrants.

94. Defendant had actual and/or constructive knowledge of the deficient policies, practices and customs alleged above. Despite having knowledge of the above, the Defendant condoned, tolerated and through its own actions or inactions thereby ratified such policies.

95. As such, Defendant City of Northglenn was deliberately indifferent and reckless with respect to the potential violation of constitutional rights.

96. James Strong Jr. had a right to be free from violations of his constitutional rights and from excessive force.

97. The violation of James Strong Jr.'s constitutional rights by Defendants Nicholas Wilson, Jason Schlenker, and Adam Nielsen was the plainly obvious consequences of Defendant City of Northglenn's failures.

98. Defendant City of Northglenn's policies, practices, customs, and/or failures were the moving force behind the actions of Defendant resulting in the injuries to Plaintiff.

99. Executing a no-knock search warrant is a usual and recurring situation with which the agents of Defendant City of Northglenn encounter on a regular basis.

100. The policies, practices, customs, and failures of the City of Northglenn caused James Strong Jr. damages in that he suffered extreme physical and mental pain during the assault that resulted in his death.

101. The acts or omissions of Defendant City of Northglenn as described herein deprived James Strong Jr. of the rights, immunities, and privileges secured to him under the Fourth Amendment to the United States Constitution, including the right to be free from excessive force.

102. As a proximate result of Defendants' unlawful conduct, James Strong Jr. and the Estate of James Strong Jr. has suffered actual physical and emotional injuries, and other damages and losses entitling it to compensatory damages in amounts to be determined at trial. These injuries include, but are not limited to, loss of constitutional and federal rights, physical injuries, extraordinary pain and suffering at the time of death, emotional distress to which his Estate is entitled to claim on his behalf, and for his loss of enjoyment of life and the value of his life and continuing familial relationships.

103. The Estate of James Strong Jr. also has suffered lost future earnings, earnings capacity and related economic loss from James Strong Jr.'s life ending at 32.

104. Plaintiffs are further entitled to attorneys' fees and costs pursuant to 42 U.S.C. §1988, pre-judgment interest and costs as allowable by federal law.

WHEREFORE, the Estate of James Strong Jr. demands judgment against Defendant City of Northglenn for damages, costs, disbursements, attorney's fees, interests, and for any further relief that this Court deems fair and just.

### Count 5: 42 U.S.C. § 1983-*Monell* Claim
### (*Estate of James Strong Jr. vs. City of Thornton, Colorado*)

105. Plaintiffs re-allege and incorporate herein the allegations contained in paragraphs 1 through 49 above, as if fully restated herein.

106. At all relevant times, Defendant City of Thornton maintained, operated, or otherwise contributed to a special weapons and tactics (S.W.A.T.) unit known as the North Metro Task Force.

107. Defendant Nicholas Wilson, Jason Schlenker, Adam Nielsen and other members of the North Metro Task Force were acting pursuant to these policies, practices, or customs.

108. At all times relevant to this complaint, Defendants Wilson, Schlenker, and Nielsen were employed by the North Metro Task Force and acting under color of state law.

109. At all relevant times, Defendant City of Thornton had in effect official policies or longstanding practices and customs that condoned and fostered the unconstitutional conduct of Defendant Nicholas Wilson, Jason Schlenker, and other members of the North Metro Task Force.

110. Defendant City of Thornton failed to properly train members of this Task Force, including Defendants Nicholas Wilson, Jason Schlenker, and Adam Nielsen on the use of excessive force.

111. Defendant City of Thornton failed to properly train members of this Task Force, including Defendants Nicholas Wilson, Jason Schlenker, and Adam Nielsen on the execution of no-knock warrants.

112. Defendant had actual and/or constructive knowledge of the deficient policies, practices and customs alleged above.  Despite having knowledge of the above, the Defendant condoned, tolerated and through its own actions or inactions thereby ratified such policies.

113. As such, Defendant City of Thornton was deliberately indifferent and reckless with respect to the potential violation of constitutional rights.

114. James Strong Jr. had a right to be free from violations of his constitutional rights and from excessive force.

115. The violation of James Strong Jr.'s constitutional rights by Defendants Nicholas Wilson, Jason Schlenker, and Adam Nielsen was the plainly obvious consequences of Defendant City of Thornton's failures.

116. Defendant City of Thornton's policies, practices, customs, and/or failures were the moving force behind the actions of Defendant resulting in the injuries to Plaintiff.

117. Executing a no-knock search warrant is a usual and recurring situation with which the agents of Defendant City of Thornton encounter on a regular basis.

118. The policies, practices, customs, and failures of the City of Thornton caused James Strong Jr. damages in that he suffered extreme physical and mental pain during the assault that resulted in his death.

119. The acts or omissions of Defendant City of Thornton as described herein deprived James Strong Jr. of the rights, immunities, and privileges secured to him under the Fourth Amendment to the United States Constitution, including the right to be free from excessive force.

120. As a proximate result of Defendants' unlawful conduct, James Strong Jr. and the Estate of James Strong Jr. has suffered actual physical and emotional injuries, and other damages and losses entitling it to compensatory damages in amounts to be determined at trial. These injuries include, but are not limited to, loss of constitutional and federal rights, physical injuries, extraordinary pain and suffering at the time of death, emotional distress to which his Estate is entitled to claim on his behalf, and for his loss of enjoyment of life and the value of his life and continuing familial relationships.

121. The Estate of James Strong Jr. also has suffered lost future earnings, earnings capacity and related economic loss from James Strong Jr.'s life ending at 32.

122. Plaintiffs are further entitled to attorneys' fees and costs pursuant to 42 U.S.C. §1988, pre-judgment interest and costs as allowable by federal law.

WHEREFORE, the Estate of James Strong Jr. demands judgment against Defendant City of Thornton for damages, costs, disbursements, attorney's fees, interests, and for any further relief that this Court deems fair and just.

### Count 6: 42 U.S.C. § 1983-*Monell* Claim
### (*Estate of James Strong Jr. vs. City of Westminster, Colorado*)

123. Plaintiffs re-allege and incorporate herein the allegations contained in paragraphs 1 through 49 above, as if fully restated herein.

124. At all relevant times, Defendant City of Westminster maintained, operated, or otherwise contributed to a special weapons and tactics (S.W.A.T.) unit known as the North Metro Task Force.

125. Defendant Nicholas Wilson, Jason Schlenker, Adam Nielsen and other members of the North Metro Task Force were acting pursuant to these policies, practices, or customs.

126. At all times relevant to this complaint, Defendants Wilson, Schlenker, and Nielsen were employed by the North Metro Task Force and acting under color of state law.

127. At all relevant times, Defendant City of Westminster had in effect official policies, or longstanding practices and customs that condoned and fostered the unconstitutional conduct of Defendant Nicholas Wilson, Jason Schlenker, and other members of the North Metro Task Force.

128. Defendant City of Westminster failed to properly train members of this Task Force, including Defendants Nicholas Wilson, Jason Schlenker, and Adam Nielsen on the use of excessive force.

129. Defendant City of Westminster failed to properly train members of this Task Force, including Defendants Nicholas Wilson, Jason Schlenker, and Adam Nielsen on the execution of no-knock warrants.

130. Defendant had actual and/or constructive knowledge of the deficient policies, practices and customs alleged above.  Despite having knowledge of the above, the Defendant condoned, tolerated and through its own actions or inactions thereby ratified such policies.

131. As such, Defendant City of Westminster was deliberately indifferent and reckless with respect to the potential violation of constitutional rights.

132. James Strong Jr. had a right to be free from violations of his constitutional rights and from excessive force.

133. The violation of James Strong Jr.'s constitutional rights by Defendants Nicholas Wilson, Jason Schlenker, and Adam Nielsen was the plainly obvious consequences of Defendant City of Westminster's failures.

134. Defendant City of Westminster's policies, practices, customs, and/or failures were the moving force behind the actions of Defendant resulting in the injuries to Plaintiff.

135. Executing a no-knock search warrant is a usual and recurring situation with which the agents of Defendant City of Westminster encounter on a regular basis.

136. The policies, practices, customs, and failures of the City of Westminster caused James Strong Jr. damages in that he suffered extreme physical and mental pain during the assault that resulted in his death.

137. The acts or omissions of Defendant City of Westminster as described herein deprived James Strong Jr. of the rights, immunities, and privileges secured to him under the Fourth Amendment to the United States Constitution, including the right to be free from excessive force.

138. As a proximate result of Defendants' unlawful conduct, James Strong Jr. and the Estate of James Strong Jr. has suffered actual physical and emotional injuries, and other damages and losses entitling it to compensatory damages in amounts to be determined at trial. These injuries include, but are not limited to, loss of constitutional and federal rights, physical injuries, extraordinary pain and suffering at the time of death, emotional distress to which his Estate is entitled to claim on his behalf, and for his loss of enjoyment of life and the value of his life and continuing familial relationships.

139. The Estate of James Strong Jr. also has suffered lost future earnings, earnings capacity and related economic loss from James Strong Jr.'s life ending at 32.

140. Plaintiffs are further entitled to attorneys' fees and costs pursuant to 42 U.S.C. §1988, pre-judgment interest and costs as allowable by federal law.

WHEREFORE, the Estate of James Strong Jr. demands judgment against Defendant City of Westminster for damages, costs, disbursements, attorney's fees, interests, and for any further relief that this Court deems fair and just.

### Count 7: Battery
### (*Estate of James Strong Jr. vs. Nicholas Wilson*)

141. Plaintiffs re-allege and incorporate herein the allegations contained in paragraphs 1 through 49 above, as if fully restated herein.

142. Defendant Nicholas Wilson intended to and did cause an offensive or harmful physical contact with James Strong Jr.

143. The contact was harmful and/or offensive, as James Strong Jr. died as a result.

144. As a proximate result of Defendant Wilson's conduct, James Strong Jr. and the Estate of James Strong Jr. has suffered actual physical and emotional injuries, and other damages and losses entitling him to compensatory damages in amounts to be determined at trial.

WHEREFORE, the Estate of James Strong Jr. demands judgment against Defendant Nicholas Wilson for damages, costs, disbursements, attorney's fees, interests, and for any further relief that this Court deems fair and just.

### Count 8: Battery
### (*Estate of James Strong Jr. vs. Jason Schlenker*)

145. Plaintiffs re-allege and incorporate herein the allegations contained in paragraphs 1 through 49 above, as if fully restated herein.

146. Defendant Jason Schlenker intended to and did cause an offensive or harmful physical contact with James Strong Jr.

147. The contact was harmful and/or offensive, as James Strong Jr. died as a result.

148. As a proximate result of Defendant Schlenker's conduct, James Strong Jr. and the Estate of James Strong Jr. has suffered actual physical and emotional injuries, and other damages and losses entitling him to compensatory damages in amounts to be determined at trial.

WHEREFORE, the Estate of James Strong Jr. demands judgment against Defendant Jason Schlenker for damages, costs, disbursements, attorney's fees, interests, and for any further relief that this Court deems fair and just.

## Count 9: Battery
### (*Estate of James Strong Jr. vs. City of Northglenn*)

149. Plaintiffs re-allege and incorporate herein the allegations contained in paragraphs 1 through 49 above, as if fully restated herein.

150. At all times relevant, Defendants Nicholas Wilson and Jason Schlenker were acting in their capacity as agents of and in the scope of their employment with the City of Northglenn.

151. Defendants intended to and did cause an offensive or harmful physical contact with James Strong Jr.

152. The contact was harmful and/or offensive, as James Strong Jr. died as a result.

153. As a proximate result of Defendants' conduct, James Strong Jr. and the Estate of James Strong Jr. has suffered actual physical and emotional injuries, and other damages and losses entitling him to compensatory damages in amounts to be determined at trial.

WHEREFORE, the Estate of James Strong Jr. demands judgment against Defendant City of Northglenn for damages, costs, disbursements, attorney's fees, interests, and for any further relief that this Court deems fair and just.

## Count 10: Assault

*(Lanhisha Richmond, individually and as the Natural Parent of JS and TSR, minors vs. Nicholas Wilson)*

154. Plaintiffs re-allege and incorporate herein the allegations contained in paragraphs 1 through 49 above, as if fully restated herein.

155. Defendant Nicholas Wilson intended to cause an offensive or harmful physical contact when firing his weapon.

156. The actions of Defendant Nicholas Wilson placed Lanhisha Richmond, JS, and TSR in apprehension of such contact.

157. As a proximate result of Defendant Wilson's conduct, Plaintiffs have suffered actual physical and emotional injuries, and other damages and losses entitling him to compensatory damages in amounts to be determined at trial.

WHEREFORE, Lanhisha Richmond, individually and as the Natural Parent of JS and TSR, minors, demands judgment against Defendant Nicholas Wilson for damages, costs, disbursements, attorney's fees, interests, and for any further relief that this Court deems fair and just.

## Count 11: Assault
*(Lanhisha Richmond, individually and as the Natural Parent of JS and TSR, minors vs. Jason Schlenker)*

158. Plaintiffs re-allege and incorporate herein the allegations contained in paragraphs 1 through 49 above, as if fully restated herein.

159. Defendant Jason Schlenker intended to cause an offensive or harmful physical contact when firing his weapon.

160. The actions of Defendant Jason Schlenker placed Lanhisha Richmond, JS, and TSR in apprehension of such contact.

161. As a proximate result of Defendant Schlenker's conduct, Plaintiffs have suffered actual physical and emotional injuries, and other damages and losses entitling him to compensatory damages in amounts to be determined at trial.

WHEREFORE, Lanhisha Richmond, individually and as the Natural Parent of JS and TSR, minors, demands judgment against Defendant Jason Schlenker for damages, costs, disbursements, attorney's fees, interests, and for any further relief that this Court deems fair and just.

## Count 12: Assault
### (*Lanhisha Richmond, individually and as the Natural Parent of JS and TSR, minors vs. City of Northglenn*)

162. Plaintiffs re-allege and incorporate herein the allegations contained in paragraphs 1 through 49 above, as if fully restated herein.

163. At all times relevant, Defendants Nicholas Wilson and Jason Schlenker were acting in their capacity as agents of and in the scope of their employment with the City of Northglenn.

164. Defendants intended to cause an offensive or harmful physical contact when firing their weapon.

165. The actions of Defendants placed Lanhisha Richmond, JS, and TSR in apprehension of such contact.

166. As a proximate result of Defendants' conduct, Plaintiffs have suffered actual physical and emotional injuries, and other damages and losses entitling him to compensatory damages in amounts to be determined at trial.

WHEREFORE, Lanhisha Richmond, individually and as the Natural Parent of JS and TSR, minors, demands judgment against Defendant City of Northglenn for damages, costs,

disbursements, attorney's fees, interests, and for any further relief that this Court deems fair and just.

## Count 13: Assault
### (*Marcus Strong vs. Nicholas Wilson*)

167. Plaintiffs re-allege and incorporate herein the allegations contained in paragraphs 1 through 49 above, as if fully restated herein.

168. Defendant Nicholas Wilson intended to cause an offensive or harmful physical contact when firing his weapon.

169. The actions of Defendant Nicholas Wilson placed Marcus Strong in apprehension of such contact.

170. As a proximate result of Defendant Wilson's conduct, Plaintiff has suffered actual physical and emotional injuries, and other damages and losses entitling him to compensatory damages in amounts to be determined at trial.

WHEREFORE, Marcus Strong demands judgment against Defendant Nicholas Wilson for damages, costs, disbursements, attorney's fees, interests, and for any further relief that this Court deems fair and just.

## Count 14: Assault
### (*Marcus Strong vs. Jason Schlenker*)

171. Plaintiffs re-allege and incorporate herein the allegations contained in paragraphs 1 through 49 above, as if fully restated herein.

172. Defendant Jason Schlenker intended to cause an offensive or harmful physical contact when firing his weapon.

173. The actions of Defendant Jason Schlenker placed Marcus Strong in apprehension of such contact.

174. As a proximate result of Defendant Schlenker's conduct, Plaintiff has suffered actual physical and emotional injuries, and other damages and losses entitling him to compensatory damages in amounts to be determined at trial.

WHEREFORE, Marcus Strong demands judgment against Defendant Jason Schlenker for damages, costs, disbursements, attorney's fees, interests, and for any further relief that this Court deems fair and just.

### Count 15: Assault
### (*Marcus Strong vs. City of Northglenn*)

175. Plaintiffs re-allege and incorporate herein the allegations contained in paragraphs 1 through 49 above, as if fully restated herein.

176. At all times relevant, Defendants Nicholas Wilson and Jason Schlenker were acting in their capacity as agents of and in the scope of their employment with the City of Northglenn.

177. Defendants intended to cause an offensive or harmful physical contact when firing their weapon.

178. The actions of Defendants placed Marcus Strong in apprehension of such contact.

179. As a proximate result of Defendants' conduct, Plaintiffs have suffered actual physical and emotional injuries, and other damages and losses entitling him to compensatory damages in amounts to be determined at trial.

WHEREFORE, Marcus Strong demands judgment against Defendant City of Northglenn for damages, costs, disbursements, attorney's fees, interests, and for any further relief that this Court deems fair and just.

### Count 16: Assault
### (*Howard Mitchell Jr. vs. Nicholas Wilson*)

180. Plaintiffs re-allege and incorporate herein the allegations contained in paragraphs 1 through 49 above, as if fully restated herein.

181. Defendant Nicholas Wilson intended to cause an offensive or harmful physical contact when firing his weapon.

182. The actions of Defendant Nicholas Wilson placed Howard Mitchell, Jr. in apprehension of such contact.

183. As a proximate result of Defendant Wilson's conduct, Plaintiff has suffered actual physical and emotional injuries, and other damages and losses entitling him to compensatory damages in amounts to be determined at trial.

WHEREFORE, Howard Mitchell, Jr. demands judgment against Defendant Nicholas Wilson for damages, costs, disbursements, attorney's fees, interests, and for any further relief that this Court deems fair and just.

## Count 17: Assault
### (*Howard Mitchell Jr. vs. Jason Schlenker*)

184. Plaintiffs re-allege and incorporate herein the allegations contained in paragraphs 1 through 49 above, as if fully restated herein.

185. Defendant Jason Schlenker intended to cause an offensive or harmful physical contact when firing his weapon.

186. The actions of Defendant Jason Schlenker placed Howard Mitchell, Jr. in apprehension of such contact.

187. As a proximate result of Defendant Schlenker's conduct, Plaintiff has suffered actual physical and emotional injuries, and other damages and losses entitling him to compensatory damages in amounts to be determined at trial.

WHEREFORE, Howard Mitchell, Jr. demands judgment against Defendant Jason Schlenker for damages, costs, disbursements, attorney's fees, interests, and for any further relief that this Court deems fair and just.

## Count 18: Assault
### (*Howard Mitchell Jr. vs. City of Northglenn*)

188. Plaintiffs re-allege and incorporate herein the allegations contained in paragraphs 1 through 49 above, as if fully restated herein.

189. At all times relevant, Defendants Nicholas Wilson and Jason Schlenker were acting in their capacity as agents of and in the scope of their employment with the City of Northglenn.

190. Defendants intended to cause an offensive or harmful physical contact when firing their weapon.

191. The actions of Defendants placed Howard Mitchell, Jr. in apprehension of such contact.

192. As a proximate result of Defendants' conduct, Plaintiffs have suffered actual physical and emotional injuries, and other damages and losses entitling him to compensatory damages in amounts to be determined at trial.

WHEREFORE, Howard Mitchell, Jr. demands judgment against Defendant City of Northglenn for damages, costs, disbursements, attorney's fees, interests, and for any further relief that this Court deems fair and just.

## Count 19: False Arrest
### (*Lanhisha Richmond, individually and as the Natural Parent of JS and TSR, minors vs. Nicholas Wilson, Jason Schlenker, and City of Northglenn*)

193. Plaintiffs re-allege and incorporate herein the allegations contained in paragraphs 1 through 49 above, as if fully restated herein.

- 28 -

194. In committing the acts complained of herein, Defendants Wilson and Schlenker acted in their capacity as agents of and in the scope of their employment with the City of Northglenn in falsely arresting and/or detaining Plaintiffs Richmond, JS, and TSR with no basis in fact or law to do so.

195. At all relevant times, Defendants Wilson and Schlenker acted with the intention of restricting Plaintiffs' freedom of movement, did directly or indirectly restrict Plaintiffs' freedom of movement for a period of time, and Plaintiffs were aware that their freedom of movement was restricted.

196. Defendants Wilson and Schlenker imposed by force or threats an unlawful restraint upon Plaintiffs' freedom of movement by arresting them and transporting them to the police station where they were detained in a cell.

197. As a proximate result of Defendants' conduct, Plaintiffs have suffered actual physical and emotional injuries, and other damages and losses entitling him to compensatory damages in amounts to be determined at trial.

WHEREFORE, Lanhisha Richmond, individually and as the Natural Parent of JS and TSR, minors, demands judgment against Defendants Wilson, Schlenker, and City of Northglenn for damages, costs, disbursements, attorney's fees, interests, and for any further relief that this Court deems fair and just.

## Count 20: False Arrest
### (*Marcus Strong vs. Nicholas Wilson, Jason Schlenker, and City of Northglenn*)

198. Plaintiffs re-allege and incorporate herein the allegations contained in paragraphs 1 through 49 above, as if fully restated herein.

199. In committing the acts complained of herein, Defendants Wilson and Schlenker acted in their capacity as agents of and in the scope of their employment with the City of

Northglenn in falsely arresting and detaining Plaintiff Strong with no basis in fact or law to do so.

200. At all relevant times, Defendants Wilson and Schlenker acted with the intention of restricting Plaintiff's freedom of movement, did directly or indirectly restrict Plaintiff's freedom of movement for a period of time, and Plaintiff was aware that his freedom of movement was restricted.

201. Defendants Wilson and Schlenker imposed by force or threats an unlawful restraint upon Plaintiff's freedom of movement by arresting him and transporting him to the police station where he was detained in a cell.

202. As a proximate result of Defendants' conduct, Plaintiff has suffered actual physical and emotional injuries, and other damages and losses entitling him to compensatory damages in amounts to be determined at trial.

WHEREFORE, Marcus Strong demands judgment against Defendants Wilson, Schlenker, and City of Northglenn for damages, costs, disbursements, attorney's fees, interests, and for any further relief that this Court deems fair and just.

### Count 21: False Arrest
**(*Howard Mitchell Jr. vs. Nicholas Wilson, Jason Schlenker, and City of Northglenn*)**

203. Plaintiffs re-allege and incorporate herein the allegations contained in paragraphs 1 through 49 above, as if fully restated herein.

204. In committing the acts complained of herein, Defendants Wilson and Schlenker acted in their capacity as agents of and in the scope of their employment with the City of Northglenn in falsely arresting and detaining Plaintiff Mitchell Jr. with no basis in fact or law to do so.

205. At all relevant times, Defendants Wilson and Schlenker acted with the intention of restricting Plaintiff's freedom of movement, did directly or indirectly restrict Plaintiff's freedom of movement for a period of time, and Plaintiff was aware that his freedom of movement was restricted.

206. Defendants Wilson and Schlenker imposed by force or threats an unlawful restraint upon Plaintiff's freedom of movement by arresting him and transporting him to the police station where he was detained in a cell.

207. As a proximate result of Defendants' conduct, Plaintiff has suffered actual physical and emotional injuries, and other damages and losses entitling him to compensatory damages in amounts to be determined at trial.

WHEREFORE, Mitchell Jr. demands judgment against Defendants Wilson, Schlenker, and City of Northglenn for damages, costs, disbursements, attorney's fees, interests, and for any further relief that this Court deems fair and just.

## Count 22: Intentional Infliction of Emotional Distress
### (*Lanhisha Richmond, individually vs. Nicholas Wilson*)

208. Plaintiffs re-allege and incorporate herein the allegations contained in paragraphs 1 through 49 above, as if fully restated herein.

209. Defendant Nicholas Wilson engaged in the aforementioned conduct with knowledge and in the presence of Lanhisha Richmond, which was extreme and outrageous.

210. Defendant Nicholas Wilson, through his conduct, intended Plaintiff Richmond to suffer severe emotional distress.

211. As a direct and proximate result of Defendant's conduct, Plaintiff Richmond has suffered severe emotional distress, physical symptoms and manifestations of severe emotional

distress, mental anguish, humiliation, loss of enjoyment of life, and other non-economic losses.

WHEREFORE, Lanhisha Richmond, demands judgment against Defendant, Nicholas Wilson, for damages, costs, disbursements, attorney's fees, interests, and for any further relief that this Court deems fair and just.

### Count 23: Intentional Infliction of Emotional Distress
### (*Lanhisha Richmond, individually vs. Jason Schlenker*)

212. Plaintiffs re-allege and incorporate herein the allegations contained in paragraphs 1 through 49 above, as if fully restated herein.

213. Defendant Jason Schlenker engaged in the aforementioned conduct with knowledge and in the presence of Lanhisha Richmond, which was extreme and outrageous.

214. Defendant Schlenker, through his conduct, intended Plaintiff Richmond to suffer severe emotional distress.

215. As a direct and proximate result of Defendant's conduct, Plaintiff Richmond has suffered severe emotional distress, physical symptoms and manifestations of severe emotional distress, mental anguish, humiliation, loss of enjoyment of life, and other non-economic losses.

WHEREFORE, Lanhisha Richmond, demands judgment against Defendant, Jason Schlenker, for damages, costs, disbursements, attorney's fees, interests, and for any further relief that this Court deems fair and just.

### Count 24: Intentional Infliction of Emotional Distress
### (*Lanhisha Richmond, individually and as the Natural Parent of JS and TSR, minors vs. City of Northglenn*)

216. Plaintiffs re-allege and incorporate herein the allegations contained in paragraphs 1 through 49 above, as if fully restated herein.

217. At all times relevant, Defendants Nicholas Wilson and Jason Schlenker were acting in their capacity as agents of and in the scope of their employment with the City of Northglenn.

218. Defendants engaged in the aforementioned conduct with knowledge and in the presence of Lanhisha Richmond, which was extreme and outrageous.

219. Defendants, through their conduct, intended Plaintiff Richmond to suffer severe emotional distress.

220. As a direct and proximate result of Defendants' conduct, Plaintiff Richmond has suffered severe emotional distress, physical symptoms and manifestations of severe emotional distress, mental anguish, humiliation, loss of enjoyment of life, and other non-economic losses.

WHEREFORE, Lanhisha Richmond, individually and as the Natural Parent of JS and TSR, minors, demands judgment against Defendant, City of Northglenn, for damages, costs, disbursements, attorney's fees, interests, and for any further relief that this Court deems fair and just.


*/s/ J. Benton Stewart II*

_____

J. Benton Stewart II
Florida Bar No.: 0126969
11705 Boyette Road
Suite 205
Riverview Florida, 33569
P: 813.354.6446
F: 813.354.5574
bstewart@trialwork.net