**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

-------------------------------------------------------------------------------------------------------------

| | |
|---|---|
| The Estate of James Strong Jr.; Lanhisha Richmond, Individually and as Natural Parent of J.S. and T.S.R., minors; Marcus Strong; and Howard Mitchell Jr.;    )<br>)<br>)<br>)<br>) | |
|        Plaintiffs,    ) | |
|    ) | No: 1:17-cv-01276-WJM |
|   v.     ) | |
|    ) | Judge Martinez |
|    ) | Magistrate Judge Hegarty |
|    ) | |
| The City of Northglenn, Colorado; The City of Thornton, Colorado; The City of Westminster, Colorado; Nicholas Wilson; Jason Schlenker; and Adam Nielsen    )<br>)<br>)<br>)<br>) | **COMPLAINT** |
|        Defendants.    ) | |

---

## SECOND AMENDED COMPLAINT AT LAW

NOW COME the Plaintiffs The Estate of James Strong ("Plaintiffs"); by and through its attorney, J. Benton Stewart II in complaining against Defendants; The City of Northglenn, Colorado; The City of Thornton, Colorado; The City of Westminster, Colorado; Nicholas Wilson and Jason Schlenker; pleading hypothetically and in the alternative, states as follows:

### Jury Demand

1.      The Plaintiff hereby demands a trial by jury.

## Jurisdiction

2. This Court has jurisdiction over federal questions pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1343, as well as supplemental jurisdiction over state law claims pursuant to 28 U.S.C. §1367(a).

3. This is an action brought pursuant to 42 U.S.C. § 1983 to redress the deprivation, under color of state law, of rights secured under the Constitution or laws of the United States and for claims for violations of state law that are so related to other claims in this action within the court's original jurisdiction such that they form part of the same case or controversy under Article III of the United States Constitution.

4. Venue is proper in this Court under 28 U.S.C. §1391(b) because all incidents, events, and occurrences giving rise to this action occurred within the City of Northglenn, Adams County, Colorado, a place within the jurisdiction of this Court.

## Parties

5. A Court appointed Professional Executor is the personal representative of Estate of James Strong, Jr.  At the time of his death on May 28, 2015, James Strong, Jr. resided at 10909 E. 109th Place, Northglenn, Colorado.  At all times relevant herein, James Strong, Jr. had legal rights established by the Constitution of the United States, the Constitution of the State of Colorado, and laws set forth by state and federal statutes.

6. Lanhisha Richmond (hereinafter "Richmond") was the common-law wife of James Strong, Jr., living and residing with James Strong Jr. for approximately seven years since 2008 when he moved to Colorado from Tennessee.

7. Richmond and James Strong, Jr. had one minor daughter, JS.  JS and Richmond resided at 10909 East 109th Place, Northglenn, Colorado with James Strong Jr. at the time of the

incident giving rise to this complaint.

8.  Richmond is the parent and legal guardian of the minor child, TSR.  TSR lived with Richmond, JS, and James Strong Jr. at 10909 East 109th Place, Northglenn, Colorado, at the time of the incident giving rise to this complaint.

9. Defendant City of Northglenn, Colorado (hereinafter "City of Northglenn") is a municipality established under the laws of the State of Colorado.  It conducts official business at 11701 Community Center Drive, Northglenn, CO 80233.   The City of Northglenn Police Department was an agency of the City of Northglenn and was responsible for the hiring, training, supervising, and disciplining of agents, employees and police officers of the City of Northglenn, including Defendants Officer Nicholas Wilson, and other members of the Northglenn/Thornton SWAT Team and the North Metro Task Force.

10. Defendant City of Thornton, Colorado (hereinafter "City of Thornton") is a municipality established under the laws of the State of Colorado.  It conducts official business at 9500 Civic Center Drive Thornton, CO 80229.  The City of Thornton Police Department was an agency of the City of Thornton and was responsible for the hiring, training, supervising, and disciplining of agents, employees and police officers of the City of Thornton, including Defendant Detective Jason Schlenker and other Northglenn/ Thornton SWAT Team members that worked in concert with the North Metro Task Force.

11. Defendant City of Westminster, Colorado (hereinafter "City of Westminster") is a municipality established under the laws of the State of Colorado.  It conducts official business at 4800 W 92nd Avenue Westminster, CO 80031.  The City of Westminster Police Department was an agency of the City of Westminster and was responsible for the

hiring, training, supervising, and disciplining of agents, employees and police officers of the City of Westminster, including members of the North Metro Task Force.

12. The North Metro Task Force is a multi-jurisdictional governmental entity created under Colorado law that is made up of officers from eight cities and counties in Colorado, including the Northglenn Police Department, the City of Westminster Police Department, and the City of Thornton Police Department.  These three cities are responsible for the hiring, training, supervising, and disciplining of agents, employees, and police officers in the North Metro Task Force.

13. Defendant Nicholas Wilson was a law enforcement officer with the City of Northglenn Police Department and was assigned to the North Metro Task Force and the Northglen/Thornton SWAT team at all times material hereto. In his capacity as a police officer, said Defendant was responsible for policing the City of Northglenn under the color of state law as well as the ordinances, regulations, customs, and usages of the State of Colorado and the City of Northglenn Police Department.

14. Defendant Jason Schlenker (hereinafter "Schlenker") was a law enforcement officer with the City of Thornton Police Department and was assigned to the Northglenn/Thornton SWAT team that worked in concert with the North Metro Task Force at all times material hereto.  In his capacity as a police officer, said Defendant was responsible for policing the City of Thornton under the color of state law as well as the ordinances, regulations, customs, and usages of the State of Colorado and the City of Thornton Police Department.  That at all material times, Defendants Wilson and Schlenker were acting under color and authority of state law.

15. That at all material times, Defendants Wilson and Schlenker were employees with

Defendant City of Northglenn and City of Thornton, respectively.

16. That at all material times, Defendants Wilson and Schlenker were acting as agents of their respective cities and within the course/scope of their employment with Defendant City of Northglenn and City of Thornton, respectively.

## The Factual Allegations

17. On May 28, 2015, Richmond, her children J.S. and TSR, her husband James Strong, Jr., her brother-in-law Marcus Strong, and Mitchell, Jr. were in the home rented by Mrs. Richmond and her husband.  Richmond and James were asleep in their bedroom; JS was in her bedroom nearby; TSR was downstairs in the basement sleeping on the couch; and Marcus Strong and Howard Mitchell Jr. were in the living room.

18. Suddenly, Richmond and James were awoken by a loud sound followed by more loud noises coming from the living room area.

19. Unbeknownst to anyone inside the home, the police had allegedly detonated a flash-bang grenade outside the home and allegedly used a battering ram to knock the front door from its hinges.

20. After hearing what sounded like a fight downstairs James Strong Jr., fearing for the safety of his family, grabbed his wife's registered gun.  James Strong Jr. knew at the end of the hall past James Strong Junior his very young daughter "Peanut" was sleeping in a room by herself. James Strong Jr. was worried about the safety of his daughter and wished to protect her.

21. He did not leave the bedroom; instead, he stood behind the door with the gun pointed upward, to defend his family from whoever was intruding on their home as anyone headed toward his daughter's room would have to pass his first.

22. James Strong Jr. and Lanhisha Richmond heard footsteps moving closer to their

bedroom. At no time did they hear the intruders identify themselves as law enforcement and explosion outside or an alleged battering ram being used on the door.

23. Marcus Strong, Howard Mitchell Jr., (who were located in the front of the house near where the entry point occurred) and others inside the house never heard the men identify themselves as law enforcement.

24. Once the intruders began to enter his bedroom, James Strong Jr. fired two shots at the intruders, who had not yet identified themselves as law enforcement. The person forcing entry into the home and bedroom was Officer Nicholas Wilson, an employee with the Northglenn Police Department. Before entering the bedroom officer Wilson did not identify himself as a police officer nor call for James Strong Junior to get on the floor and surrender his weapon.

25. Officer Nicholas Wilson returned fire injuring Strong. As Strong fell to the ground, his gun expelled a third and final shot.

26. Officer Nicholas Wilson backed down the hallway continuing to shoot at Strong and Lanhisha Richmond through the bedroom wall.

27. Officer Nicholas Wilson retreated down the hall into the smaller bedroom of J.S., a child; officer Nicholas Wilson continue to fire blindly through the bedroom wall of the minor child in the direction of Lanhisha Richmond and James Strong Jr. J.S. was present in the room and clearly observable to Officer Nicholas Wilson as he continued firing through her bedroom wall.

28. Officer Nicholas Wilson continued shooting into the bedroom even though James Strong, Jr. had ceased shooting. Officer Nicholas Wilson never disengaged from firing to issue verbal commands to James Strong Jr. or to ascertain the condition of Lanhisha Richmond

or James Strong Jr. who he was firing blindly and repeatedly at through the minor child's bedroom wall.

29. Lanhisha Richmond was in the bedroom with James Strong Jr. as he was shot in front of her and fearing that she, too, would be shot by one of the rounds coming through the bedroom wall from her minor daughter's room being fired by still yet an unidentified intruder.

30. Shortly thereafter, a second unidentified armed intruder caring a rifle and dressed fully in black entered the bedroom of James Strong, Jr., pointing a gun at Strong Jr. as he lay severely injured on the ground.  Then the second intruder, later identified as Jason Schlenker, began to shoot Strong, at less than 8 feet, repeatedly with a .233 caliber rifle which was equipped with a silencer.

31. Schlenker starting firing at a distance of 8 feet and progressed until he stood over Strong Jr.'s prone body pointing the firearm directly at his head.

32. Due to the excessive number of bullets striking James Strong Jr., parts of his body were described as pulpified by the Medical Examiner.

33. Richmond was yelling at the unknown intruder (Schlenker) to stop shooting as Strong Jr. was in a fetal position on the floor and not resisting.

34. Despite her yelling, Schlenker continued to shoot and moved in closer to Strong Jr. and Richmond.  Once standing over Strong Jr., Schlenker shot Strong Jr. in his head from a distance of ten inches.   His shot was taken so close to Strong Jr's head that gunpowder burned into his face and skin as it exited the barrel of the gun.

35. The coroner's report noted that, "Evidence of close range discharge of a firearm was present on the right side of the face."

36. Schlenker's actions amounted to the execution of Strong Jr.

37. Strong Jr.'s body was riddled with 20 bullet wounds. The damage was so extensive that the Medical Examiner was not able to determine the path of many of the bullets.

38. During the course of the attack on Strong Jr., numerous shots were directed through walls where no target acquisition was possible recklessly endangering other parties within the home.

39. While extremely close range shots were being directed into Strong's prone body, at a steep angle almost directly downward because of the distance between the shooter and Strong Jr., the projectiles penetrated the floor, to the floor below and struck, among other items, a sofa where TSR, a minor, was asleep.

40. The members of the North Metro Task Force were acting on a no knock warrant. Initially a warrant was issued, but contained the wrong County so it was not valid and the task force had to seek a corrected warrant from the judge. The then corrected warrant was issued nine days before the raid on the Strong Jr. residents on May 19, 2015 to lead investigator Adam Nielsen.

41. During the nine day period between the issuance of the warrant and the execution of the warrant, a significant change in circumstances had occurred: school had ended on May 28, 2015.

42. The police were aware that the school year had ended and that children would be at home since they used the nearby public school as their staging area.

43. It is highly disfavored to serve no knock warrants when there are children present in the home unless there are extreme circumstances that call for immediate action in order to preserve the safety and welfare of the public.

44. Despite being aware that children were in the home, the police stormed the home,

allegedly launched a flash-bang grenade in the front yard, never announced their presence, and created an unsafe/lethal environment which put the lives of the occupants at substantial risk.

45. The intruders were wearing dark pants, dark long sleeve shirts, masks, and military style boots.

46. Strong was shot twenty times, including six shots to the head and neck area.

47. Marcus Strong, Mitchell Jr., and Richmond were each handcuffed, transported to the jail, and placed in cells. They sat in the cells without any information being provided or any charges being communicated.

48. Even though there was no warrant for Richmond and no charges were brought against her, her children, both TSR and JS, were taken and placed in state custody by the defendants involved in this matter.

49. The individuals within the residence of James Strong, Jr. and Lanhisha Richmond had not committed any crime at the time the police officers had entered the home.

50. James Strong Jr. was killed while acting lawfully by defending his family and his home.

51. Within the state of Colorado it is legal to maintain a firearm in your home for purposes of self protection.

52. The state of Colorado has impacted the make my day law "this is legislation giving homeowners immunity if they shoot and kill intruders within their home in Colorado. To use a gun in self-defense the shooter must have reason to believe that he or someone else in their home would otherwise suffer serious bodily injury or death.

53. Strong Jr. had a reasonable belief that he, his family and friends were in imminent danger and could receive serious bodily injury or death

54. Strong Jr. had the legal right to take the actions that he took with regards to his firearm as he had no knowledge that the intruders dressed in black were police officers.

55. Since the shooting, each of the individuals within the house, besides James Strong Jr., have faced severe emotional distress in the form of fear and nightmares, among other symptoms.

**Count 1: 42 U.S.C. § 1983 – Excessive Force**
*(Estate of James Strong vs. Nicholas Wilson)*

56. Plaintiffs re-allege and incorporate herein the allegations contained in paragraphs 1 through 55 above, as if fully restated herein.

57. The aforementioned conduct of Defendant Nicholas Wilson constituted excessive force in violation of the Fourth Amendment to the United States Constitution.

58. At all material times, Defendant Nicholas Wilson was acting under color and authority of state law as an agent and employee of Defendant City of Northglenn.

59. The aforementioned conduct of Defendant Nicholas Wilson shooting James Strong Jr. was objectively unreasonable, as he repeatedly shot James Strong Jr. after entering his home without announcing his presence and position as a police officer.

60. As a result of Defendant Nicholas Wilson's unjustified and excessive use of force, James Strong Jr. experienced conscious pain and suffering and eventually died.

61. The complained of acts or omissions of Defendant Nicholas Wilson were the proximate causes of James Strong Jr.'s death.

62. The acts or omissions of Defendant Nicholas Wilson caused James Strong Jr. damages in that he suffered extreme physical and mental pain during the assault that resulted in his death.

63. The acts or omissions of Defendants as described herein deprived Plaintiff of his

constitutional rights and caused him other damages.

64. As a proximate result of Defendant's unlawful conduct, James Strong Jr. and the Estate of James Strong Jr. has suffered actual physical and emotional injuries, and other damages and losses entitling it to compensatory damages in amounts to be determined at trial. These injuries include, but are not limited to, loss of constitutional and federal rights, physical injuries, extraordinary pain and suffering at the time of death, emotional distress to which his Estate is entitled to claim on his behalf, and for his loss of enjoyment of life and the value of his life and continuing familial relationships.

65. The Estate of James Strong Jr. also has suffered lost future earnings, earnings capacity and related economic loss from James Strong Jr.'s life ending at 32.

66. Plaintiffs are further entitled to attorneys' fees and costs pursuant to 42 U.S.C. §1988, pre-judgment interest and costs as allowable by federal law.

67. In addition to compensatory, economic, consequential and special damages, Plaintiffs are entitled to punitive damages against the Defendant, as his actions were taken maliciously, willfully and with a reckless or wanton disregard of the constitutional rights of Plaintiff.

WHEREFORE, the Estate of James Strong Jr. demands judgment against Defendant Nicholas Wilson for damages, costs, disbursements, attorney's fees, interests, and for any further relief that this Court deems fair and just.

### Count 2: 42 U.S.C. § 1983 – Excessive Force
#### (Estate of James Strong vs. Jason Schlenker)

68. Plaintiffs re-allege and incorporate herein the allegations contained in paragraphs 1 through 55 above, as if fully restated herein.

69. The aforementioned conduct of Defendant Jason Schlenker constituted excessive force in violation of the Fourth Amendment to the United States Constitution.

70. At all material times, Defendant Jason Schlenker was acting under color and authority of state law as an agent and employee of Defendant City of Thornton.

71. The aforementioned conduct of Defendant Jason Schlenker shooting James Strong Jr. was objectively unreasonable, as he repeatedly shot James Strong Jr. after entering his home without announcing his presence and position as a police officer.

72. As a result of Defendant Jason Schlenker's unjustified and excessive use of force, James Strong Jr. experienced conscious pain and suffering and eventually died.

73. The complained of acts or omissions of Defendant Jason Schlenker were the proximate causes of James Strong Jr.'s death.

74. The acts or omissions of Defendant Jason Schlenker caused James Strong Jr. damages in that he suffered extreme physical and mental pain during the assault that resulted in his death.

75. The acts or omissions of Defendant Jason Schlenker as described herein deprived Plaintiff of his constitutional rights and caused him other damages.

76. As a proximate result of Defendant's unlawful conduct, James Strong Jr. and the Estate of James Strong Jr. has suffered actual physical and emotional injuries, and other damages and losses entitling it to compensatory damages in amounts to be determined at trial. These injuries include, but are not limited to, loss of constitutional and federal rights, physical injuries, extraordinary pain and suffering at the time of death, emotional distress to which his Estate is entitled to claim on his behalf, and for his loss of enjoyment of life and the value of his life and continuing familial relationships.

77. The Estate of James Strong Jr. also has suffered lost future earnings, earnings capacity and related economic loss from James Strong Jr.'s life ending at 32.

78. Plaintiffs are further entitled to attorneys' fees and costs pursuant to 42 U.S.C. §1988, pre-judgment interest and costs as allowable by federal law.

79. In addition to compensatory, economic, consequential and special damages, Plaintiffs are entitled to punitive damages against Defendant, as his actions were taken maliciously, willfully and with a reckless or wanton disregard of the constitutional rights of Plaintiff.

WHEREFORE, the Estate of James Strong Jr. demands judgment against Defendant Jason Schlenker for damages, costs, disbursements, attorney's fees, interests, and for any further relief that this Court deems fair and just.

### Count 4: 42 U.S.C. § 1983-*Monell* Claim
### (*Estate of James Strong Jr. vs. City of Northglenn, Colorado*)

80. Plaintiffs re-allege and incorporate herein the allegations contained in paragraphs 1 through 55 above, as if fully restated herein.

81. At all relevant times, Defendant City of Northglenn maintained, operated, or otherwise contributed to a special weapons and tactics (S.W.A.T.) unit known as the Northglenn/Thornton SWAT team as well as the North Metro Task Force.

82. Defendant Nicholas Wilson, Jason Schlenker, Adam Nielsen and other members of the North Metro Task Force were acting pursuant to these policies, practices, or customs.

83. At all times relevant to this complaint, Defendants Wilson, Schlenker, and Nielsen were employed by the North Metro Task Force and acting under color of state law.

84. At all relevant times, Defendant City of Northglenn had in effect official policies or longstanding practices and customs that condoned and fostered the unconstitutional conduct of Defendant Nicholas Wilson, Jason Schlenker, Adam Nielsen and other members of the North Metro Task Force.

85. Defendant City of Northglenn failed to properly train members of this Task Force,

including Defendants Nicholas Wilson, Jason Schlenker, and Adam Nielsen on the use of excessive force.

86. Defendant City of Northglenn failed to properly train members of this Task Force, including Defendants Nicholas Wilson, Jason Schlenker, and Adam Nielsen on the execution of no-knock warrants.

87. Defendant had actual and/or constructive knowledge of the deficient policies, practices and customs alleged above.  Despite having knowledge of the above, the Defendant condoned, tolerated and through its own actions or inactions thereby ratified such policies.

88. As such, Defendant City of Northglenn was deliberately indifferent and reckless with respect to the potential violation of constitutional rights.

89. James Strong Jr. had a right to be free from violations of his constitutional rights and from excessive force.

90. The violation of James Strong Jr.'s constitutional rights by Defendants Nicholas Wilson, Jason Schlenker, and Adam Nielsen was the plainly obvious consequences of Defendant City of Northglenn's failures.

91. Defendant City of Northglenn's policies, practices, customs, and/or failures were the moving force behind the actions of Defendant resulting in the injuries to Plaintiff.

92. Executing a no-knock search warrant is a usual and recurring situation with which the agents of Defendant City of Northglenn encounter on a regular basis.

93.  The policies, practices, customs, and failures of the City of Northglenn caused James Strong Jr. damages in that he suffered extreme physical and mental pain during the assault that resulted in his death.

94. The acts or omissions of Defendant City of Northglenn as described herein deprived James Strong Jr. of the rights, immunities, and privileges secured to him under the Fourth Amendment to the United States Constitution, including the right to be free from excessive force.

95. As a proximate result of Defendants' unlawful conduct, James Strong Jr. and the Estate of James Strong Jr. has suffered actual physical and emotional injuries, and other damages and losses entitling it to compensatory damages in amounts to be determined at trial. These injuries include, but are not limited to, loss of constitutional and federal rights, physical injuries, extraordinary pain and suffering at the time of death, emotional distress to which his Estate is entitled to claim on his behalf, and for his loss of enjoyment of life and the value of his life and continuing familial relationships.

96. The Estate of James Strong Jr. also has suffered lost future earnings, earnings capacity and related economic loss from James Strong Jr.'s life ending at 32.

97. Plaintiffs are further entitled to attorneys' fees and costs pursuant to 42 U.S.C. §1988, pre-judgment interest and costs as allowable by federal law.

WHEREFORE, the Estate of James Strong Jr. demands judgment against Defendant City of Northglenn for damages, costs, disbursements, attorney's fees, interests, and for any further relief that this Court deems fair and just.

### Count 5: 42 U.S.C. § 1983-*Monell* Claim
(*Estate of James Strong Jr. vs. City of Thornton, Colorado*)

98. Plaintiffs re-allege and incorporate herein the allegations contained in paragraphs 1 through 55 above, as if fully restated herein.

99. At all relevant times, Defendant City of Thornton maintained, operated, or otherwise contributed to a special weapons and tactics (S.W.A.T.) unit known as

15

Northglenn/Thornton SWAT team as well as the North Metro Task Force.

100. Defendant Nicholas Wilson, Jason Schlenker, and other members of the North Metro Task Force were acting pursuant to these policies, practices, or customs.

101. At all times relevant to this complaint, Defendants Wilson, and Schlenker, were employed by the city of Torrington and acting under the authority vested in them by the city and acting under color of state law.

102. At all relevant times, Defendant City of Thornton had in effect official policies or longstanding practices and customs that condoned and fostered the unconstitutional conduct of Defendant Nicholas Wilson, Jason Schlenker, and other members of the North Metro Task Force.

103. Defendant City of Thornton failed to properly train members of this Task Force, including Defendants Nicholas Wilson, and Jason Schlenker, on the use of excessive force.

104. Defendant City of Thornton failed to properly train members of this Task Force, including Defendants Nicholas Wilson, and Jason Schlenker, on the execution of no-knock warrants.

105. Defendant city of Westminster proactively elected not to provide appropriate insurgency and forcible entry training to its officers.  It is clear and foreseeable that without extensive training and practice in forcible entry that injuries to officers and as well as citizens will occur.

106. Defendant had actual and/or constructive knowledge of the deficient policies, practices and customs alleged above.  Despite having knowledge of the above because of their own decisions not to follow recognize training procedures, the Defendant condoned,

tolerated and through its own actions or inactions thereby ratified such policies.

107. As such, Defendant City of Thornton was deliberately indifferent and reckless with respect to the potential violation of constitutional rights.

108. James Strong Jr. had a right to be free from violations of his constitutional rights and from excessive force.

109. The violation of James Strong Jr.'s constitutional rights by Defendants Nicholas Wilson and Jason Schlenker, was the plainly obvious consequences of Defendant City of Thornton's failures.

110. Defendant City of Thornton's policies, practices, customs, and/or failures to train their officers in armed forcible entry and the constitutional rights of citizens they were to be considered innocent until proven guilty, was the moving force behind the actions of Defendant resulting in the injuries to Plaintiff.

111. Executing a no-knock search warrant is a usual and recurring situation with which the agents and employees of Defendant City of Thornton encounter on a regular basis.

112. The policies, practices, customs, and failures of the City of Thornton caused James Strong Jr. damages in that he suffered extreme physical and mental pain during the assault that resulted in his death.

113. The acts or omissions of Defendant City of Thornton as described herein deprived James Strong Jr. of the rights, immunities, and privileges secured to him under the Fourth Amendment to the United States Constitution, including the right to be free from excessive force.

114. As a proximate result of Defendants' unlawful conduct, James Strong Jr. and the Estate of James Strong Jr. has suffered actual physical and emotional injuries, and other

damages and losses entitling it to compensatory damages in amounts to be determined at trial. These injuries include, but are not limited to, loss of constitutional and federal rights, physical injuries, extraordinary pain and suffering at the time of death, emotional distress to which his Estate is entitled to claim on his behalf, and for his loss of enjoyment of life and the value of his life and continuing familial relationships.

115. The Estate of James Strong Jr. also has suffered lost future earnings, earnings capacity and related economic loss from James Strong Jr.'s life ending at 32.

116. Plaintiffs are further entitled to attorneys' fees and costs pursuant to 42 U.S.C. §1988, pre-judgment interest and costs as allowable by federal law.

WHEREFORE, the Estate of James Strong Jr. demands judgment against Defendant City of Thornton for damages, costs, disbursements, attorney's fees, interests, and for any further relief that this Court deems fair and just.

### Count 6: 42 U.S.C. § 1983-*Monell* Claim
*(Estate of James Strong Jr. vs. City of Westminster, Colorado)*

117. Plaintiffs re-allege and incorporate herein the allegations contained in paragraphs 1 through 55 above, as if fully restated herein.

118. At all relevant times, Defendant City of Westminster maintained, operated, or otherwise contributed to a special weapons and tactics (S.W.A.T.) unit known as Northglenn/Thornton SWAT Team as well as the North Metro Task Force.

119. Defendant Nicholas Wilson, Jason Schlenker, Adam Nielsen and other members of the North Metro Task Force were acting pursuant to these policies, practices, or customs.

120. At all times relevant to this complaint, Defendants Wilson, and Schlenker, were employed by and agents of the city of Westminster and acting under color of state law entrusted to them by the city by virtue of their employment.

18

121. At all relevant times, Defendant City of Westminster had in effect official policies, or longstanding practices and customs that condoned and fostered the unconstitutional conduct of Defendant Nicholas Wilson, Jason Schlenker, and other members of the North Metro Task Force.

122. Defendant city of Westminster proactively elected not to provide appropriate insurgency and forcible entry training to its officers. It is clear and foreseeable that without extensive training and practice in forcible entry that injuries to officers and well as well as citizens will occur.

123. Defendant City of Westminster failed to properly train members of this Task Force, including Defendants Nicholas Wilson, and Jason Schlenker, on the use of nondeadly and reasonably necessary force before deadly force.

124. The city of Westminster does not have in place policies and procedures that the officers must follow to ensure the use of deadly force will occur only in extreme situations when there is no other practical alternative to preserv the safety of its citizens.

125. Defendant City of Westminster failed to properly train members of this Task Force, including Defendants Nicholas Wilson, and Jason Schlenker, on the execution of no-knock warrants as indicated by their failure to have written policies on such use of force and the requisite training and testing to ensure that its officers are following these policies.

126. The polices noted above are readily accepted in standard practice law enforcement agencies within the United States.  The National Sheriffs Association publishes the best standards and practices that they recommend be followed by each agency because of this generally in common knowledge.

127. Defendant had actual and/or constructive knowledge of the deficient policies, practices and customs alleged above.  Despite having knowledge of the above, the Defendant condoned, tolerated and through its own actions or inactions thereby ratified such policies.

128. As such, Defendant City of Westminster was deliberately indifferent and reckless with respect to the potential violation of constitutional rights which occur with the unnecessary use of force that is tantamount to cruel and unusual punishment of individuals who must be assumed innocent until proven guilty by a court of law.

129. James Strong Jr. had a right to be free from violations of his constitutional rights and from excessive force.

130. The violation of James Strong Jr.'s constitutional rights by Defendants Nicholas Wilson and Jason Schlenker, was the plainly obvious consequences of Defendant City of Westminster's failures.

131. Defendant City of Westminster's policies, practices, customs, and/or failures were the moving force behind the actions of Defendant resulting in the injuries to Plaintiff.

132. Executing a no-knock search warrant is a usual and recurring situation with which the agents of Defendant City of Westminster encounter on a regular basis.

133. The policies, practices, customs, and failures of the City of Westminster caused James Strong Jr. damages in that he suffered extreme physical and mental pain during the assault that resulted in his death.

134. The acts or omissions of Defendant City of Westminster as described herein deprived James Strong Jr. of the rights, immunities, and privileges secured to him under the Fourth Amendment to the United States Constitution, including the right to be free from

excessive force.

135. As a proximate result of Defendants' unlawful conduct, James Strong Jr. and the Estate of James Strong Jr. has suffered actual physical and emotional injuries, and other damages and losses entitling it to compensatory damages in amounts to be determined at trial. These injuries include, but are not limited to, loss of constitutional and federal rights, physical injuries, extraordinary pain and suffering at the time of death, emotional distress to which his Estate is entitled to claim on his behalf, and for his loss of enjoyment of life and the value of his life and continuing familial relationships.

136. The Estate of James Strong Jr. also has suffered lost future earnings, earnings capacity and related economic loss from James Strong Jr.'s life ending at 32.

137. Plaintiffs are further entitled to attorneys' fees and costs pursuant to 42 U.S.C. §1988, pre-judgment interest and costs as allowable by federal law.

WHEREFORE, the Estate of James Strong Jr. demands judgment against Defendant City of Westminster for damages, costs, disbursements, attorney's fees, interests, and for any further relief that this Court deems fair and proper.

Respectfully Submitted,

*/s J. Benton Stewart II* _____
J. Benton Stewart II
Florida Bar No.: 0126969
11705 Boyette Road
Suite 205
Riverview Florida, 33569
P: 813.354.6446
F: 813.354.5574
bstewart@trialwork.net

**CERTIFICATE OF SERVICE**

I hereby certify that on May 31, 2018, I electronically filed the foregoing *Amended Complaint* with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

***Thomas Rice***
***Eric M. Ziporin***
Senter Goldfarb & Rice, LLC
3900 East Mexico Avenue, Suite 700
Denver, Colorado 80210
Telephone:  303-320-0509
*Attorney for Defendants City of Northglenn, City of Westminster, City of Thornton, Nicholas Wilson, and Jason Schlenker*

_\_/s *J. Benton Stewart II*\_\_\_\_
**J. Benton Stewart II**